# CASES

## DECIDED IN THE

## COURT OF CHANCERY OF NEW-JERSEY,

## JANUARY TERM, 1832.

---

REBECCA BULLOCK v. BENJAMIN ZILLEY, surviving Execu-
tor of JOHN BUTCHER, deceased, and others.

John Butcher, the testator, directed all his property to be sold, and vested the
   proceeds, after payment of debts, in his executors as trustees; direct-
   ing them to divide it into two equal parts. One part or moiety he orders
   them to place at interest, and pay the interest arising annually to his daugh-
   ter Elizabeth, during life, and if she should die without leaving a child or
   children living, then to pay the interest, annually, to the support and main-
   tenance of *his nephew Thomas Bullock, and Rebecca his wife, and their
   children.* The other moiety or half part he directs his executors to pay, in
   their discretion, to the support and maintenance of *his nephew Thomas Bul-
   lock and his family;* that is to say, John B. Bullock and all the children
   born to the said Thomas. After the testator's death, in 1821, the executors
   accounted before the orphan's court, and acknowledged a balance of eight
   thousand four hundred and sixty-eight dollars and twenty cents in their
   hands. In 1826 the testator's daughter Elizabeth died, without issue. In 1829
   Rebecca Bullock was divorced from her husband Thomas Bullock, by act of
   the legislature; after which the executors refused payment to her. Upon
   demurrer to a bill filed by her against the executors, for support out of the
   interest of the first moiety;—HELD, that from her being distinctly named in
   the first bequest, as one of the objects of the testator's bounty, and the en-
   tire difference in the language used by testator in that and the bequest of
   the other moiety; the testator intended that Rebecca, the wife of Thomas
   Bullock, should have a personal and individual interest in this bequest, and
   not simply an interest *as* the wife of Thomas Bullock or a member of his
   family.
It is the same as though the will had said, the interest should be paid annually
   to Thomas Bullock, and Rebecca Bullock, and their children. Even during

62

the coverture the complainant had a vested beneficial interest in the annuity, which could have been enforced against her husband.

The words " *his wife*," as applied to the complainant in the first bequest, are to be taken as mere words of description, of the person intended to take, not that she must necessarily be the wife of Thomas Bullock, and take only in that capacity: and her interest in the bequest is not affected by the divorce.

YALE LAW LIBRARY

THE following facts are sufficient for the proper understanding of the question raised by this demurrer.

In February, 1818, John Butcher, late of Burlington county, made his last will and testament; in which he directed all his property, real and personal, to be sold by his executors, and the proceeds, after paying debts, he vests in their hands as trustees, directing them to divide it into two equal parts.

One part or moiety he orders placed out on interest, and to pay the interest annually arising to his daughter Elizabeth, during her natural life, that she may have a comfortable support; and if his said daughter should marry and have a child or children living at her death, then the principal to be paid to them. If she should die without such child or children living at her death, then his order is that the principal sum shall be kept out at interest, and the interest paid annually to the support and maintenance of his nephew *Thomas Bullock, and Rebecca his wife, and their children*, including John B. Bullock, who was born before marriage.

The other moiety or half part he directs his executors to pay, in their discretion, to the support and maintenance of his nephew Thomas Bullock and his family; that is to say, John B. Bullock and all the other children that may be born to the said Thomas during his natural life.

In case Thomas should die leaving no lawful issue living, and John B. Bullock should be alive, then the whole of the principal and the unexpended interest shall be paid to him. And if John B. Bullock should die in the life-time of the testator, and the testator should die without lawful issue, then the whole of the estate to be divided equally among his three brothers.

The testator died leaving John B. Bullock and five other children alive. Thomas Butcher and Benjamin Zilley proved the

will as executors. In 1821 they accounted in the orphan's court, <span>Jan. 1832.</span> and acknowledged to be in their hands for distribution the sum of eight thousand four hundred and sixty-eight dollars and twenty cents.

<span>Bullock<br>v.<br>Zilley et al.</span>

On the 11th day of February, 1829, the complainant was divorced from her husband by an act of the legislature of this state, and the marriage contract was thereby declared to be dissolved. In 1826, Elizabeth, the daughter of the testator, to whom the use of the first moiety was given, died without leaving a child or children living.

The bill then charges, that since the granting of the divorce, the executors refuse to pay to the complainant any part of the interest accruing on the first moiety of the said balance so acknowledged by the executors to be in their hands; and it prays that she may be allowed such portion of said interest as may be sufficient for her maintenance, or so much as the court may direct.

No claim is made for any portion of the second moiety, which is directed to be paid at the discretion of the executors for the support of Thomas Bullock and his family.

The defendants have demurred to this bill, and assign as cause of demurrer, that it appears on the face of the bill that the complainant has been divorced from her husband and the marriage contract dissolved; and that by the true and lawful construction of the will of the said John Butcher, deceased, she can receive benefit under it only in the character of wife of Thomas Bullock; and that, having by her own showing and admission ceased to be such wife, she is not entitled to the relief prayed for in her said bill.

*G. D. Wall*, for the complainant;

*E. B. Cannon*, for the defendants.

The Chancellor. As the complainant in her bill does not call in question the act of the legislature dissolving the marriage contract, but admits its validity, and comes into court claiming rights notwithstanding she is no longer the wife of Thomas Bullock, the only question that can be raised is this: whether the

Jan. 1832.

Bullock
v.
Zilley et al.

words " his wife," as applied to the complainant in the bequest, are to be taken as mere words of description : if so taken, the rights of the complainant are not affected by the divorce ; but if the person taking must necessarily be the wife of Thomas Bullock, and take in that capacity, then her interest is at an end.

In cases of this description, the intention of the testator must govern : the difficulty is to arrive at it with a sufficient degree of certainty to satisfy the mind. From the best consideration I have been able to give this case, I incline to the opinion that the testator intended that Rebecca, the wife of Thomas Bullock, should have a personal and individual interest in this bequest, and not simply an interest in it as the wife of Thomas Bullock, or a member of the family. And I draw this conclusion from the following circumstances.

1. *She is mentioned by name.* The interest is to be paid annually to the support, not of Thomas Bullock and his family, or Thomas Bullock and his wife and family, but of Thomas Bullock, and Rebecca his wife, and their children. Had Rebecca died, and Thomas Bullock married another wife, she could have taken no personal interest under this will either as wife or as one of the family. The persons to be benefited by the bounty of the testator are distinctly named ; and, as it regards the present complainant, it is the same as though the will had said, the interest should be paid annually to Thomas Bullock, and Rebecca Bullock, and their children. Even during the coverture the complainant had a vested beneficial interest in the annuity, which could have been enforced against her husband.

2. If the defendants' construction be true, that the complainant can only take as the wife of Thomas Bullock, then if it had so happened that Thomas Bullock had died in the life-time of the testator, his interest would have lapsed, and the complainant, though a widow, could have taken nothing, she not being at the time the wife of Thomas Bullock, the legatee. It can scarcely be imagined that this was the intention of the testator.

3. And again, if the defendants' construction be the true one, then in case the husband, Thomas Bullock, had died at any time after the decease of the testator, the complainant's interest would have ceased, she being no longer his wife, in the language of

the will. No good reason can be assigned for such a construction. And that it would operate unjustly and with hardship, by taking away support and maintenance at a time when it would be most needed, is a sufficient inducement for the court to lean against it, and favor one more in accordance with the charitable intentions of the testator.

4. Another circumstance, which induces a conclusion favorable to the claim of the complainant, is this; that the testator, in directing the manner in which the other moiety or half part of the fund is to be appropriated, makes use of language entirely different from that used in relation to the first moiety, and excludes the complainant altogether from any direct interest in it. That moiety he directs his executors to pay, in their discretion, to the support and maintenance of his nephew Thomas Bullock and his family; that is to say, John B. Bullock and all the other children that may be born to the said Thomas during his natural life. The fact that the interest in this last moiety is confined expressly and guardedly to the use of Thomas Bullock and his children, shows that the distinction was made understandingly; and is persuasive evidence that the testator intended, by constituting the complainant one of the objects of his bounty as to the first moiety, that she should have a direct and personal interest, which should be appropriated to her personal support. I can see no other reason for the difference made in the disposition of the two moieties.

Upon what grounds the parties were divorced, or which complained of the other, I am not informed. The bill simply alleges the fact of the divorce. The demurrer admits it as stated, and the court can look no further than the pleadings. I am not aware, however, that any developement of facts can change the legal rights of the parties.

Considering the case, then, simply upon the intention of the testator, as collected from the will itself, my conclusion is, for the reasons above stated, that the complainant is entitled to relief, and that the demurrer be overruled, with costs.

Demurrer overruled.